BEFORE THE SECOND DIVISION, NOVEMBER 15, 1956

**No. 60355.**—California Mill Supply Co. and W. J. Byrnes & Co., Inc., et al. v. United States, protests 139003–K, etc. (Los Angeles).

RAO, Judge: Certain vegetable fiber, invoiced variously as "Palm Fibre," "Niga-Palm Fibre," and "Argentine vegetable fibre not braided," imported from Argentina, was classified by the collector of customs at the port of Los Angeles as crin vegetal, twisted or not twisted, and, accordingly, assessed with duty at the rate of 1 cent per pound as provided in paragraph 1001 of the Tariff Act of 1930.

It is the principal claim of plaintiffs herein that this merchandise is entitled to free entry within the provisions of paragraph 1684 of said act as fibrous vegetable substances, not dressed or manufactured in any manner. Other claims for

free entry are predicated upon the provisions of paragraph 1674, for palm leaf in its natural state; of paragraph 1722, for crude vegetable substances; or of paragraph 1806, for woods, not specially provided for, in the rough. Alternatively, it is urged that said merchandise is dutiable at the rate of 10 per centum ad valorem, by virtue of the provision in paragraph 1558 of said act, for unmanufactured articles, not specially enumerated.

At the initial hearing in each of the four protests before us, a representative sample of the merchandise was introduced into evidence as plaintiffs' exhibits 1, and, in two cases, 2, respectively, and forwarded to the customs laboratory in New York City for a comparative analysis to determine whether it is material "other than Chamaerops humilis." Thereafter, the actions were consolidated for the purposes of trial.

The report of the chief chemist at the port of New York is not in evidence, although it is filed with the official papers. It appears from counsel's statement in connection therewith that the chemist was unable to make the determination requested, but suggested as one of four possible sources of information the University of California Herbarium at Berkeley, Calif. Accordingly, and upon application of counsel for plaintiffs, portions of the samples in evidence as plaintiffs' exhibits 1 and 2, which portions were subsequently marked plaintiffs' collective exhibit A, were withdrawn for analysis by that authority.

Plaintiffs' substantive evidence consists of the testimony of Annetta Mary Carter, principal herbarium botanist in the department of botany at the University of California, in Berkeley. Miss Carter received her B. A. and M. A. degrees in botany at the University of California and, thereafter, for a period of 20 to 25 years, has been employed in the herbarium of that university, serving as principal herbarium botanist for the past 6 years. Her duties, to a large extent, involve identifications of plant material submitted by the public and by members of the university. During the course of her employment, she has made many identifications of plant material, of which some have been plants of palm origin.

This witness received the six samples which are plaintiffs' collective exhibit A, which she described as "fragments of leaf structure very obviously leaf because of the presence of epidermis tissue above and below and the presence of fibers distributed through them in a manner characteristic of palm leaves." These she examined to determine whether or not they were the same plant as *Chamaerops humilis*. With the aid of textbook references and a microscope, and through comparison with dried specimens contained in the herbarium's files, she determined that the plant material, as represented by plaintiffs' collective exhibit A, was not the same as *Chamaerops humilis*.

In a report, dated April 12, 1954 (plaintiffs' exhibit 3), and by means of two diagrams showing cross-sections, magnified 150 times, of the material in plaintiffs' collective exhibit A and of a leaf of *Chamaerops humilis* (plaintiffs' collective exhibit 4), she explained the reasons for this conclusion as follows: That the material in the six samples, comprising plaintiffs' collective exhibit A, shows the same pattern of internal structure, containing an abundance of fiber bundles with the green or photosynthetic cells arranged in characteristic H-shaped pattern; that *Chamaerops humilis*, the Mediterranean hair palm, has a smaller proportion of fiber bundles in the leaves and more extensive green tissue; that the material of the samples is coarser in texture, the leaves thicker, containing larger and more abundant fiber bundles, than the material of *Chamaerops humilis*.

On cross-examination, Miss Carter stated that she did not previously have occasion to study the plant known as *Chamaerops humilis*, although she has known the plant growing. She described the plant as a palm of usually 4 or 5 feet in height, with leaves, not more than 2 or 3 feet in diameter, which branch out in a palmate fashion, with a narrow leaf stalk, less than an inch wide, bordered on

either side with spines. She obtained the leaf, from which she made the cross-section, from the botanic gardens at the university (which has a fair representation of plants from various parts of the world) and also studied material so labeled in the herbarium (where there are dried samples of plants from all over the world).

Miss Carter admitted that she could not identify the plant from which the samples contained in plaintiffs' collective exhibit A came, for the reason that there are some 1,200 varieties of palms, and she is not an authority on palms in general. Neither did she know what crin vegetal is. The names by which she identifies plants are the botanical or scientific ones, not the common names.

This witness was recalled at a subsequent hearing to testify with respect to a second examination she made of samples taken from exhibits 1 and 2 in protests 139003–K, etc., and of fiber withdrawn from exhibit 1 in protest 143440–K [*American Express Company* v. *United States*, 39 C. C. P. A. (Customs) 8, C. A. D. 456], which were received in evidence as plaintiffs' exhibits 6 and 5, respectively. She stated that she made a microscopic examination of the material in said exhibits and found that the material had the same general characteristics, "the general characteristics of the arrangement of the fiber bundles was very similar in the two," and that it appeared to be the same merchandise. When asked to explain the meaning of fiber bundles, Miss Carter stated:

Well, in the structure of a leaf there are certain hard fibers which give it its strength. And in this case the fibers are collected together in large bundles which are called fiber bundles, generally speaking, and those are always in a given leaf, always appear in the same type of arrangement.

On the basis of fibers alone, it was not possible for this witness to identify botanically either plaintiffs' exhibit 5 or plaintiffs' exhibit 6. However, she was able to state with assurance that they were not of the species *Chamaerops humilis*, by reason of "the very different arrangement of the fiber bundles in the Chamaerops humilis and in this material, 5 and 6."

Upon cross-examination, Miss Carter admitted that she had no experience with crin vegetal, but found from recourse to authoritative sources that *Chamaerops humilis* is normally called "crin vegetal." She stated, further, that microscopic examination revealed certain resemblances between plaintiffs' exhibits 5 and 6, which identified them as similar and differentiated them greatly from "the crin vegetal which I know to be a European palm." Of the samples of *Chamaerops humilis* she examined, one was from the botanical garden, the other from the herbarium specimen grown in Europe. In the opinion of this witness, each genus of palms has its own characteristics, by which one could identify it on the basis of fiber bundles, and, while fiber bundles of different species might have certain points of similarity, they might have greater points of difference, and that it is standard botanical practice to be able to recognize the similarities or the differences. Concerning plaintiffs' exhibits 5 and 6, the witness stated:

I would consider the fibers in these Exhibits 5 and 6 to be similar enough to put them in very closely, if not the same species of palm, very closely related if not the same, on the basis of my general knowledge of variations in plant structure and similarity in plant structure.

Questioned further with respect to these two exhibits, the witness stated that she was not sure that she would be able to distinguish between the two; in fact, she thought they were the same, substantially the same. Moreover, she was sure that nothing in either of these exhibits was *Chamaerops humilis*.

Counsel for plaintiffs thereupon moved for the incorporation of the record in the case of *American Express Company* v. *United States, supra*. In granting the motion, over objection of counsel for defendant, the trial judge stated in part:

There is testimony in the record here of an expert from the University of California to the effect that the importation now before the court is positively not crin vegetal but is substantially the same as the other exhibit in the American Express Company case. I am inclined to grant the motion because if the merchandise before us is substantially the same as that involved in the other case it seems to me that it is a proper case for incorporation.

In the decided case, it was held by our appellate court that crin vegetal, as provided for in paragraph 1001 of the Tariff Act of 1930, was the fiber obtained from a palm of Mediterranean origin, known botanically as *Chamaerops humilis*, and that certain vegetable fiber, invoiced as nigapalm fiber, of the Caranda palm genus "is not the same as the palm known as 'Chamaerops humilis' from which, the record indicates, the conceded crin vegetal is obtained." The effect of that decision was to sustain the contention of appellant that said merchandise was entitled to entry free of duty within the provisions of paragraph 1684 of the Tariff Act of 1930 for fibrous vegetable substances, not dressed or manufactured in any manner.

The evidence in the case before us is convincing on the issue of the distinction between the merchandise at bar and the plant known as *Chamaerops humilis*. It also establishes to a fair degree of certainty the substantial similarity between the vegetable fibers at bar and those the subject of decision in the incorporated case.

Predicated upon the foregoing facts and the cited authority, we hold the instant merchandise to be entitled to free entry as fibrous vegetable substances, not dressed or manufactured in any manner. The claim in the protests to that effect is sustained. There being no evidence to support the alternative claims, and in view of our affirmative finding with respect to the applicability of said paragraph 1684, all other claims are overruled.

Judgment will be entered accordingly.